UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-250-KDB
3:20-cr-221-KDB-DCK-3

| | |
|---|---|
| CAMERON JAMAL MCMANUS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, (Doc. No. 1).

### I. BACKGROUND

Petitioner was charged in a drug trafficking conspiracy along with two co-Defendants. The charges pertaining to Petitioner are: possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) (Counts Six, Twelve, Thirteen, Fourteen); distribution and possession with intent to distribute cocaine base on October 10, 2019 in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Seven); possession of a firearm in furtherance of a drug trafficking crime, *i.e.*, Count Seven, on October 10, 2019 in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Eight); cocaine base trafficking conspiracy, with 28 grams or more of a mixture and substance containing a detectable amount of cocaine base being reasonably foreseeable by Petitioner, in violation of 21 U.S.C. § 841(b)(1)(B) (Count Nine); and distribution and possession with intent to distribute cocaine base on October 18, 2019, with 28 grams or more of a mixture and substance containing a detectable amount of cocaine base being reasonably foreseeable by Petitioner, and aiding and abetting the

1

same, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2 (Count Ten). (3:20-cr-221 (CR) Doc. No. 1).

Petitioner pleaded guilty to Counts Seven, Eight, and Ten pursuant to a written Plea Agreement in exchange for the dismissal of Counts Six, Nine, Twelve, Thirteen, and Fourteen. (CR Doc. No. 32 at ¶¶ 1, 2). Petitioner admitted that he is, in fact, guilty as charged in Counts Seven, Eight, and Ten. (Id. at ¶ 1). The Plea Agreement provides that Petitioner's breach of the agreement would "permit the United States to proceed on any dismissed, pending, superseding or additional charges…." (Id. at ¶ 4). The Plea Agreement explains that the statutory minimum and minimum sentences as follows:  a maximum of 20 years' imprisonment, a $1,000,000 fine, and at least three years of supervised release for Count Seven; a minimum term of five years' imprisonment and a maximum term of life imprisonment, consecutive to any other term of imprisonment imposed, a $250,000 fine, or both, and no more than five years of supervised release for Count Eight; and a minimum term of five years' imprisonment, a maximum of 40 years' imprisonment, a maximum fine of $5,000,000, and at least four years of supervised release for Count Ten. (Id. at ¶ 5).

The parties agreed to jointly recommend that: the amount of cocaine base that was known to or reasonably foreseeable by Petitioner was more than 28 grams but less than 112 grams; the plea is timely for purposes of acceptance of responsibility, if applicable; and if the Court determines from Petitioner's criminal history that the career offender provision (U.S.S.G. § 4B1.1) or the armed career criminal provision (U.S.S.G. § 4B1.4) of the U.S. Sentencing Guidelines applies, such provision may be used in determining the sentence. (Id. at ¶ 8). The parties remained free to argue their respective positions regarding other specific offense characteristics, cross-references, special instructions, reductions, enhancements, and adjustments, as well as departures

2

or variance from the applicable guideline range at sentencing. (Id.). The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum and would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. (Id. at ¶ 7).

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Petitioner read and understood the Factual Basis filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. (Id. at ¶ 11). The Plea Agreement further provides that the Factual Basis does not necessarily represent all conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts for purposes of sentencing. (Id. at ¶ 12).

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right to: withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; be assisted by an attorney at trial; confront and cross-examine witnesses; and not be compelled to incriminate himself. (Id. at ¶¶ 13-15). The Plea Agreement acknowledges that Petitioner had discussed with defense counsel his post-conviction and appellate rights, whether there are potential issues relevant to an appeal or post-conviction action, and the possible impact of any such issue on the desirability of entering into the Plea Agreement. (Id. at ¶ 16). Petitioner expressly waived the right to contest his conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. (Id.

3

at ¶ 17). The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." (Id. at ¶ 23).

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> On or about October 10, 2019, in Union County … Cameron Jamal **MCMANUS, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, that is, a mixture and substance containing a detectable amount of cocaine base**, commonly referred to as "crack cocaine," a Schedule II controlled substance. **MCMANUS knew that the cocaine base that he distributed and possessed with the intent to distribute was a controlled substance under the law at the time of the distribution and possession**. Specifically, MCMANUS sold 11.4 grams of cocaine base to an undercover law enforcement agent in exchange for U.S. currency. The Drug Enforcement Agency (DEA) crime lab confirmed the weight and identity of the controlled substance. **MCMANUS was in actual possession of two firearms that helped further, facilitate, and advance his commission of this federal drug trafficking crime**; the firearms were a Romarm/Cugir, model WASR-10, 7.62 caliber rifle and a Taurus, model PT111 G2 millennium, 9mm pistol….

(CR Doc. No. 33 at 1-2) (paragraph numbers omitted; emphasis added).

On September 25, 2020, a Rule 11 hearing came before the Honorable David S. Cayer, United States Magistrate Judge. (CR Doc. No. 34). Petitioner stated, under oath, that he received a copy of the Indictment and discussed it with counsel, and fully understood the charge and the maximum and minimum penalties that could apply to him. (Id. at 1). Petitioner agreed that he understood that pleading guilty may cause him to be deprived of certain civil rights, and that he discussed with counsel: how the sentencing guidelines may apply to his case; that the Court would not be able to determine the sentence until a PSR has been prepared and Petitioner has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he has no right to withdraw the plea even if he receives a sentence more severe

4

than he expects. (Id. at 2). Petitioner acknowledged the rights he was waiving by pleading guilty, including the waiver of his appeal and post-conviction rights, and stated his understanding that the case would proceed directly to sentencing. (Id. at 2-3).

The Plea Agreement was summarized in open court. (Id. at 3). Petitioner confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. (Id.). Petitioner stated that he read the Factual Basis, understood it, and agreed with it. (Id.). Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence other than the terms of the Plea Agreement. (Id.). Petitioner had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services. (Id.).

The Presentence Investigation Report's (PSR) scored the base offense level for Counts Seven and Ten[1] as 24 because the violation of § 841(a)(1) involved more than 28 grams but less than 112 grams of cocaine base pursuant to U.S.S.G. § 2D1.1(a)(5). (CR Doc. No. 42 at ¶ 24). Petitioner did not receive a Chapter Four enhancement. (Id. at ¶ 25). Petitioner provided a written statement accepting responsibility, stating:

> I, Cameron McManus, did commit the offenses that I pled guilty to in Counts 7, 8, & 10. **On October 10, 2019 in the Western District of NC, I did distribut[e] and possess with intent to Distribute cocaine base**. Specifically, I sold 11.4 grams. **I possessed firearms as indicated in the factual basis**. **On October 18, 2019, I did distribute & possess with intent to distribute 53.91 grams of cocaine base**…. I did so as described in the factual basis. I apologize for my actions.

(Id. at ¶ 16) (emphasis added). Three levels were accordingly deducted for acceptance of responsibility, resulting in a total offense level of 21. (Id. at ¶¶ 26-28). Petitioner had nine criminal

---

[1] The term of imprisonment for the § 924(c) offense in Count Eight is the sentence which is required by statute. (CR Doc. No. 42 at ¶ 29).

5

history points a criminal history category of IV. (Id. at ¶¶ 44-45). The resulting advisory guidelines range was 60 to 71 months of imprisonment for Counts Seven and Ten,[2] and the statutorily required consecutive sentence for Count Eight. (Id. at ¶¶ 76-77).

A sentencing hearing came before the Court on May 27, 2021. (CR Doc. No. 89). Petitioner stated that he read the PSR, understood it, and had all the time he needed to discuss it with counsel. (Id. at 3). There were no objections to the PSR. (Id.). The parties jointly recommended a sentence at the low end of the advisory guideline range of a total of 120 months' imprisonment. (Id. at 3-4, 6). Petitioner addressed the Court, apologizing for "the wrongs that [he] ha[s] committed…." (Id. at 5).

The Court adopted the PSR without change and sentenced Petitioner to a total of 120 months' imprisonment, consisting of 60 months for Counts Seven and Ten, concurrent, and 60 months for Count Eight, consecutive, in a Judgment entered on March 6, 2021. (CR Doc. No. 73); see (CR Doc. No. 74) (Statement of Reasons). The Petitioner did not appeal.

Petitioner filed the instant *pro se* § 2255 Motion to Vacate on May 25, 2022.[3] (Doc. No. 1). He argues that counsel was ineffective for providing deficient advice that rendered his guilty plea involuntary. Petitioner asks the Court to vacate Counts Seven and Eight. (Id. at 12).

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence,

---

[2] The guideline imprisonment range for a total offense level of 21 and a criminal history category of IV is 57 to 71 months' imprisonment, however, the minimum sentence required by statute is 60 months' imprisonment. Therefore, the advisory guideline range is 60 to 71 months' imprisonment. (Doc. No. 42 at ¶ 77).

[3] See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

6

or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). The Court also determines that no response from the Government is required.

### III. DISCUSSION[4]

Petitioner appears to argue that counsel provided deficient performance which affected the voluntariness of his guilty plea. The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).

---

[4] Petitioner's claims have been liberally construed, restated, and renumbered. Any argument or subclaim which is not specifically addressed in this Order, has been considered and rejected.

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). A defendant is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id. Further, knowing and voluntary appellate and post-conviction waivers are generally enforceable. See United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); United States v. Lemaster, 403 F.3d 216, 200 (4th Cir. 2005).

The record reveals that Petitioner's guilty plea was knowingly and voluntarily entered with full knowledge of all of its consequences. Magistrate Judge Cayer conducted a thorough Rule 11 colloquy and concluded that Petitioner was pleading guilty knowingly and voluntarily with a full

8

understanding of his plea's consequences, including his sentencing exposure and the waiver of his appellate and post-conviction rights. Petitioner stated that he was pleading guilty because he was guilty of Counts Seven, Eight, and Ten, that he had fully discussed any possible defenses with counsel, and that he was satisfied with counsel's services.

First, Petitioner contends that counsel failed to adequately investigate the facts and evidence in the case, and by failing to discuss trial strategy and preparation with him. (Doc. No. 1 at 15-16, 28). Specifically, he argues that counsel failed to "challenge" or investigate Counts Seven and Eight because they were "not supported by sufficient evidence" (Id. at 15-16). He argues that that he told counsel that he never possessed drugs as charged in Count Seven and that counsel told him his lack of possession was confirmed by the October 10 video. He also claims that the § 924(c) violation charged in Count Eight fails without the predicate drug trafficking crime in Count Seven. (Id. at 16-18).

These claims are refuted by the record and were waived by Petitioner's knowing and voluntary guilty plea. Petitioner admitted in the Plea Agreement and under oath at the Rule 11 hearing that: he understood the charges; he discussed the case and any possible defenses with counsel; he was satisfied with counsel's services; and he is guilty of Counts Seven and Eight. (CR Doc. No. 32 at 1); (CR Doc. No. 34 at 3). In the Factual Basis, that Petitioner specifically admitted that he knowingly distributed and possessed with intent to distribute cocaine base on October 10, 2019 while knowing that the cocaine base was a controlled substance under the law. (CR Doc. No. 33 at 1). He again acknowledged his guilt of the charged offenses in his statement accepting responsibility in the PSR, and during his allocution at the sentencing hearing. (CR Doc. No. 42 at -pp 16); (CR Doc. No. 89 at 5). Petitioner's present conclusory and self-serving contentions to the contrary are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in

open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., Lemaster, 403 F.3d at 221 ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"). Further, Petitioner fails to explain how any additional investigation or discussion of trial strategy would have benefitted him in any way. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (vague and conclusory allegations in a § 2255 petition may be disposed of without further investigation by the district court). Petitioner's knowing and voluntary guilty plea excused counsel from further investigating the case or preparing for trial and he has failed to demonstrate that counsel performed deficiently in any way. See Willis, 992 F.2d at 490. Accordingly, Petitioner's claims that counsel was ineffective for failing to adequately investigate and challenge the charges and discuss trial tactics were waived by his knowing and voluntary guilty plea and are conclusively refuted by the record.

Second, Petitioner contends that "counsel told him because he was present that he also sold drugs and that he had to admit to the drug charges because if he did not the Government would get someone to say [he] had the drugs and the Government would win." (Doc. No. 1 at 20). This claim is conclusively refuted by Petitioner's admissions of guilt in the Plea Agreement, Rule 11 hearing, PSR, and sentencing hearing as discussed *supra*, and are rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221.

Third, Petitioner argues that counsel implied that, if Petitioner did not accept the plea offer, he would be "on his own" and would have to proceed to trial without counsel. (Doc. No. 1 at 28). This claim is conclusively refuted by the record. The Plea Agreement, which Petitioner freely and

10

voluntarily entered, explains that Petitioner was waiving the right to be assisted by an attorney at trial by pleading guilty. (CR Doc. No. 32 at ¶ 15). Petitioner further admitted under oath at the Rule 11 hearing that he understood that, if he exercised his right to trial, he would be entitled to the assistance of a lawyer and that he was waiving that right by pleading guilty. (CR Doc. No. 34 at 2-3). His present self-serving claims to the contrary are rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221.

Fourth, Petitioner contends that counsel told him that, if he went to trial, he would be deemed a career offender "because [he] had some old charges which would give [him] more time." (Doc. No. 1 at 28). This claim is conclusively refuted by the record. Petitioner obtained a number of benefits by pleading guilty, but avoiding a career offender enhancement was not among those benefits. The Plea Agreement specifically provides that the career offender provision of the U.S. Sentencing Guidelines may be used in determining the sentence if Petitioner qualifies for sentencing under that provision. (CR Doc. No. 32 at ¶ 8). Petitioner admitted under oath at the Rule 11 hearing that he understood that the applicable guideline range and sentence had not yet been determined, and that he may receive a sentence that is more severe than he expects. (CR Doc. No. 34 at 2). The foregoing belies Petitioner's present contention that counsel misadvised him that avoiding the career offender provision was somehow conditioned on his entry of a guilty plea. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221. Therefore, this claim is rejected.

Finally, Petitioner suggests that counsel rushing him to sign the Plea Agreement. (Doc. No. 1 at 28). He notes that he was arrested on July 9, 2020 and signed the Plea Agreement 70 days later on September 17, 2020. (Id.). This claim is too vague and conclusory to support relief insofar as Petitioner fails to explain why 70 days was not long enough for him to confer with counsel or decide to plead guilty. See Dyess, 730 F.3d at 359. Petitioner has failed to demonstrate that counsel

11

performed deficiently by urging him to swiftly agree to plead guilty, which was as a reasonable strategic decision that resulted in the dismissal of five serious charges and a three-level reduction in the offense level for acceptance of responsibility. See generally Strickland, 466 U.S. at 681 (counsel's reasonable strategic decisions are entitled to deference). Further, the Petitioner's suggestion that he did not have enough time to make his decision to plead guilty is conclusively refuted by the record. He stated under oath at the Rule 11 hearing that: he understood the charges and consequences of the plea; the plea was freely and voluntarily entered; he had enough time to discuss with his attorney any possible defenses to the charges; and he was satisfied with counsel's services. (CR Doc. No. 34 at 3). His present self-serving and unsupported claims to the contrary are rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

Moreover, these claims of ineffective assistance of counsel cannot support relief because Petitioner has failed to demonstrate prejudice. He does not assert that he would have proceeded to trial but for counsel's allegedly deficient performance; he only seeks vacatur of Counts Seven and Eight, and not the withdrawal of the guilty plea so that he can proceed to trial. See Hill, 474 U.S. at 59. Nor would it have been rational for Petitioner to proceed to trial in light of the strong evidence of his guilt as set forth in the Factual Basis and PSR, and the benefits of pleading guilty including the dismissal of five serious charges and a three-level reduction for acceptance of responsibility. Accordingly, the Petitioner's claims of ineffective assistance of counsel are dismissed and denied.

## IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 1) is **DISMISSED** and **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: June 5, 2022

Kenneth D. Bell
United States District Judge